Good morning, Your Honor. May it please the Court, I'd like to reserve three minutes for rebuttal. We respectfully submit that the District Court committed two separate errors of law, each of which require the reversal of the judgments below. My name is Marty Flumenbaum, I'm a partner at Paul Weiss, Rifkind, Wharton & Garrison, and I represent U.S. Bank, which was the beneficial owner of two life insurance policies that had originally been purchased in 2005 by a wealthy California woman named Myrna Morrison. These policies were ultimately sold to U.S. Bank as part of a group of 170 Phoenix insurance policies in the secondary market in 2010. Ms. Morrison died on January 28, 2012, and on February 23, 2012, U.S. Bank submitted a claim for the death benefits, including the state certificates of death as required under the Morrison policies and under the California law. Phoenix, however, refused to pay the $20 million on these policies for almost five months, and this was not an isolated incident of improper claims handling on the part of Phoenix. Counsel, the trial judge concluded, not at the pleading stage, but at the summary judgment stage, that your client had failed to come forward with sufficient evidence to satisfy the Connecticut rule on the statutory violation, and the conclusion was that all you had done was shown that there had been claims made of a violation of the banking regulation in a number of cases, coincidentally by your client in many of them, but that you hadn't shown that those claims had ever been validated. And it seems to me, in looking at it, what the trial judge was saying is that in order to defeat summary judgments, you have to come forward with admissible evidence, and by analogy to federal civil procedure 403, while relevant, evidence can be held inadmissible if it meets a number of what Wigmore called rules of auxiliary policy, one of them being complicating the issues and requiring essentially many trials within a trial. There is no Connecticut case that states that you have to have determinations of wrongdoing, as the district judge found. But there's no Connecticut case that says you don't. Yes, there are. The Marinos case, which was by the Supreme Court of Connecticut in 2013, states explicitly that what you have to show in order to defeat summary judgment is admissible evidence, and admissible evidence as... Well, admissible evidence. Admissible evidence has to be declarations, not mere assertions that were in pleadings. Where the court got confused was he was relying on some cases where there were pleadings attached in support of a Cutler claim, and that was not the case here. In this case, U.S. banks submitted nine factual affidavits under oath, which is exactly what we do under Rule 56 when we defeat a claim. Well, would your argument be that it goes to the weight, not to the admissibility, so there was enough weight there that you created a triable issue? We certainly created it. There was enough weight for a CUPTA victory because CUPTA does not require other determinations of wrongdoing. What it requires is a pattern of misconduct, and CUPTA is very clear about that. But many states, in fact most states, have this language, and different Supreme Courts have interpreted it differently. So can you tell me, under Connecticut law, what does frequency mean? Frequency under Connecticut law actually means more than two. It does not require a magic number. It requires a pattern. And what we showed in this case... That was my second question. What is the pattern? The pattern in this case is we showed that during late 2011 and early 2012, as Phoenix struggled with its own financial condition, what Phoenix did was attempt to delay or deny making payments on at least seven policies, four of which were owned by U.S. banks, three of which were owned by others, totaling $50 million, including the $20 million in the two Morrison policies. And after Phoenix paid on the Morrison policies, it was five months, the court dismissed our original breach of contract claim, just leaving two claims, one the CUPTA claim and one the bad faith and fair dealing claim. And then on March 11, 2013, three weeks before the trial, the court granted Phoenix's motion for a determination of wrongdoing, plaintiff has not created a triable issue of material fact as to CUPTA. And that is just simply wrong. It is not supported. The two cases that he relies on, in his own opinion, don't support that decision. There is not one case in Connecticut that requires it. Every case in Connecticut says you have to have admissible evidence through declarations, affidavits and other documentary evidence. Granted, counsel, granted that in the abstract, that's correct. But in the concrete case you're talking about, what Connecticut case, either at the superior court level, the appellate court level or the Supreme Court level, strictly holds that a trial court erred in granting summary judgment in a making payments based upon claim that the delays were wrongful. Well, part of an improper practice. The thing about CUPTA is, and it's different from the bad faith and fair dealing claim, CUPTA doesn't require negative intent, bad intent. CUPTA requires an unfair claims practice. But in context, you're talking about a specific kind of wrongful insurance practice, namely delays. Well, as we saw in the Morrison case. In Morrison, there was no, the California code specifically requires that the insurer respond within 40 days of the claim in writing to either state the claim is valid or invalid. They didn't do that. And in the other cases that we had alleged were part of this 40 days where the claim hadn't been paid. They hadn't, they were conserving their cash because they had lost a significant amount of money during the financial crisis, and they were taking it out on the policyholders and delaying payment of valid policies, policies that they had collected claims. But you didn't answer my question. Which Connecticut case at any level has held that a summary judgment was rightly or properly refused or should have been refused where a evidence of the nature that you have provided it was provided? I think our case fits within Marinos. I think it fits within Beller. I can't give you a specific case that deals with our specific situation, but every Connecticut case that deals with it talks about declarations, affidavits, and other documentary evidence being sufficient to defeat summary judgment. It doesn't require determinations of wrongdoing. It doesn't require that, and if you think about the policy, it makes eminent sense that it wouldn't require that because what you have here is what happened here in the Benjamin affidavit, which was attached to this, which was part of our proof and very different from the complaint that was filed in the Jackson case, which is not owned by U.S. Bank. She basically says in her affidavit that she was coerced into settling with them at an amount less than she could have received because of their practices. And fortunately, our client is one of the few entities that can go toe-to-toe with an insurance company and make sure that they follow their procedures and honor their claims. These individual shareholders certainly can't do that who were delayed. May I turn you to your second point because your time is running out? You didn't tender a jury instruction initially as to the point you raised. Right. And I gather your argument is that once the jury came back with a question, then the judge was obligated to. But can you explain to me what happened? Because reading the transcript, it appears as though the judge agreed with you, was going to give the instruction, the jury came in, and he's without further ado just said, okay. Right. I think your Honor is right. And if you read that transcript, it's mystifying. First of all, Phoenix objects. They don't object that, you know, that it's wrong to read it. They object that they'll be prejudiced by the reading of a state statute, which clearly shows, you know, how important this issue is. Yeah. U.S. Bank says we'd like to put in the statute. They object to that. He calls on the jury and then just. Right. He asks them if he's right that they want further clarification as to when the 40-day period goes. He gets a looks like a nod from the transcript. It's hard to it's hard to predict. But what what he then does is mystifying because he gives them a wrong instruction. Not only does he not give the correct instruction, the proof of claim where he says, you've got the arguments, you've got the you've got the evidence. I can't give you any more than that. I can't make up things. I mean, it's just a mystifying answer. But it seems that it seems that the that you as appellant created part of the problem. I'm not that in terms of because you're trying to at this point say that there was something in your brief that would preserve an objection. And I think some of the behavior of the bank not requiring a ruling on it and then waiting until something happened that you invited the error. There's really two separate issues. And and and if if if the jury and if the jury request had not occurred, I'd be on far weaker ground. And you'd be, yeah, you'd be in quicksand, quicksand outside. But but but the fact is, we did try to preserve the issue in the in the in the pleadings. This case was very compressed. Each side was given four hours to put on. How did that happen? Did you stipulate to that? No. OK. I mean, how do you try a bad faith case in four hours? I fortunately did not have to try that. My partner, Beth Wilkinson, did. And it was difficult. Yeah. It was very compressed. There was there was, as you can see, after Judge Klausner gave the erroneous instruction, refused to give the right instruction. He said, I'm leaving later in the afternoon. I'll get another judge if you haven't reached a verdict. Otherwise you have to come back on Monday. I mean, and of course, shortly thereafter, they came back with a verdict for Phoenix. But the question, I think, is, did you adequately preserve the objection? Yes. And that's a that's a valid question. Definitely is the answer to that, because we made it very clear at the time of the jury request. If that hadn't occurred, I think Judge Callahan would be right. We would be partially blamed. But I don't think we're to blame at all because we made it very clear to the judge what was required. We pointed out the specific statute that defined proof of claim, that defined when when the 40 day period began. And and and we thought he was going to actually read it. And then he just didn't. And then quickly left the bench. But what's your best authority really to support your argument that the 40 day period for PHL to accept or deny the claim under twenty six, ninety five point seven B started once PHL received the death certificate? Because isn't there a factual dispute about whether PHL knew there were no issues with the collateral assignments? I actually think it was an issue of law that that could have been determined, but we don't have to rely on on that issue because at that point, all we had asked the judge to read was the definition of proof of claim, which says that it begins when any evidence is presented to the insurer. And in fact, you don't even the claimant doesn't even have to provide the evidence to the insurer. We had a situation here where we paid two and a half million dollars of premiums on these policies that we were declared the owner of these policies and annual statements. And then at the time when we try to receive the money, I think of the old Seinfeld joke. You know, you're good at taking the reservation, but not, you know, but not honoring the reservation. I'm just curious, as a practical standpoint, if I'm just saying this hypothetically, because I'm not speaking for myself or for the panel, but if, say, if you lost on the jury issue said, you know, that you lost on that, but you prevailed on that summary judgment was, you know, that it shouldn't have been granted on the issue. What's the difference in the damages that you can get under those different theories? It's significant. CUPTA is totally independent of bad faith. The elements are different. It allows us to get injunctive relief, which we might not have been able to get under bad faith. We would still be entitled to. Is there a difference in the money? In terms of the money, we would still be entitled to attorney's fees, I believe, under that, and consequential damages. I haven't thought about. Bad faith gives you punitive damages. Punitive damages. Not under CUPTA, though. I believe you can get punitive damages under CUPTA, but I think the most important thing is you can get injunctive relief, and that would be very important, especially to a bank which owns 170 policies. Our questions are taking over time, but we'll give you some time for rebuttal. Thank you. Thank you very much. Good morning, Your Honors. Good morning. May it please the Court. My name is David McDell, and I represent PHL Variable Insurance Company, also known as Phoenix. Unless the Court prefers otherwise, I'll begin my comments on the CUPTA issue. The trial judge correctly found that insufficient evidence had been submitted by U.S. banks to support a finding that Phoenix engaged in unfair settlement practices with such frequency as to rise to a level of a general business practice. Let me be the devil's advocate on this. So you've got all this smoke. You know, you've got a room of smoke. But you seem to be, I mean, the courts seem to require that there had to have been an actual finding of liability. And in most same or similar things or instances, that just isn't the case. I mean, say, for example, you could have someone that anyone could look at it, and as a matter of law say that there was liability, but they never filed a claim. So it seems your position in order to prevail would be that there would always have to have been some finding by a court in order for them to create a triable issue. I don't believe that that's correct. Well, there's a whole bunch of people here that are saying that you did the same thing. That's not correct. I think what you have to do is look at Judge Clauser's ruling in the context of the evidence that was submitted. Judge Clauser did not say as a general matter you always have to have a finding of wrongdoing. What Judge Clauser did is said if this is all you're going to put in front of me are five different claims out of a constellation of about 25,000 claims handled by PHL over four or five years, you have to, we're not going to have many trials in the courtroom. You have to have some finding of fact, some conclusion of law, some evidence of wrongdoing if you're going to meet your burden to show that you acted unfairly. So what Connecticut case says that? The reason I ask that is every state, most states have this statute, and I'm always surprised at how differently they construe it. In my home state of Montana, there's no question, U.S. banks survive summary judgment easily. Go across the border to Idaho, not so fast. So tell me about Connecticut law and how this all plays out. Connecticut law is actually fairly well fleshed out on this issue. There are a number of cases that apply Connecticut law that have found that if you're going to only rely on allegations of wrongdoing that can contain another complaint, that you really haven't met your burden, that there has to be a finding of wrongdoing. The United States District Court for the District of Connecticut in Hawkeye v. Zurich Insurance said that nowhere in Hawkeye's description of these cases does it explain the status of the cases and whether a finding that Zurich engaged in that practice was made, and there are no allegations with respect to the resolution of the cited cases. In Hawkeye, the district court looked at the allegations, took note of the allegations in the other case, didn't discount them, but said, without some finding of wrongdoing, you're not providing me with sufficient evidence to find tough a liability. The Supreme Court of Connecticut in Lees v. Middlesex said because the plaintiff deduced no additional facts or information concerning any of those matters, the trial court properly determined that they were of no evidentiary value. Here, all they did was they got declarations from folks that had already made complaints or filed lawsuits against Phoenix and other jurisdictions, and the court looked at that and said it's simply not enough to show that you acted with a level of frequency that rises to a general business practice. But under that theory, how could a plaintiff ever recover under CUPTA? Because there has to be a first case. Well, there has to be a first case, but only if you're accepting the argument that there has to be a finding of wrongdoing. There are lots of different ways you could put evidence in front of a court that would create a fact issue as to whether there was a CUPTA violation. For example, if you had regulatory market conduct audits that found that there were problems with how you handled claims, if there were reinsurance audits, if there was internal documentation that showed that you were handling claims differently or in a way that amounted to an unfair settlement practice. There's lots of different ways that you can show a CUPTA claim, but if you do as U.S. Bank did here and simply try to prove your CUPTA claim by pointing to allegations made by others, Connecticut courts are very clear that there has to be some finding of wrongdoing. But separate and apart from simply this evidentiary issue, the record before the court allows the court to dismiss the CUPTA claim on two separate and independent grounds. Number one, the lower court summary judgment order dismissed all damages, all actual damages asserted by U.S. Bank. As such, U.S. Bank cannot show that there was an ascertainable loss that is necessary to support a CUPTA claim. Second, the bad faith claim was premised on the very same foundation that the CUPTA claim was premised. If your honors would look at paragraph 109 of the second amended complaint, you'll see that the factors that go to show the unfair settlement practices also are the same factors that are used and that the court instructed the jury on in bad faith. Sure, but they're probably concentric circles. I mean, it's easier in my estimation to prove an unfair trade practices claim than it is a bad faith claim. It may be, Your Honor, but you still have to have, you still have to be able to show that there was an unfair settlement practice that was a proximate cause of an ascertainable loss. And I think that by the jury finding that there was no bad faith, they can't meet that causal link between an unfair settlement practice and damages. You would agree that if their theory were proven, in other words that the insurance company was delaying simply for the purpose of playing the interest rate, that would be a wrongful unfair trade, unfair settlement practice. Sure, if they put competent summary judgment evidence. So what's wrong with the expert opinion they tendered? I didn't hear you. What's wrong with the expert opinion that they tendered? The expert opinion, all the expert opinion did was restate the same allegations that were submitted through the separate declarations and then added up the total of the death benefit claims and said that that somehow showed a level of frequency. The court, again, in the first sentence of that third paragraph in its order on the CUPA issue said that the evidence submitted wasn't enough to show that there was a frequency of practice that rise to a general business practice. Well, can an expert give that kind of opinion, though? In a trial, experts regularly give those kind of opinions, right? Sure, an expert can give. So it's not a situation that an expert can't give that opinion. Was there anything to show that this expert wasn't qualified to give that opinion? There was evidence to show that his calculation really didn't make any mathematical sense. Well, but I guess the fact that they did put the expert declaration along with the individual declarations, does that make this case more than just in the individual declarations? Does that change the calculus of the evidence? It does not, Your Honor, because all the expert did was look at the allegations, the other cases that have been filed against the company and said that that's enough to show a frequency, which is really more. . . So you're saying 0 plus 0 is 0? That's correct. On the issue, and I'm happy to answer. . . I mean, the case that you relied on, I think Hawkeye, you said? Yes. Did they have an expert in that? If they did, it's not reflected in the record. One other point I would make on the sufficiency of evidence. Opposing counsel noted the Marinos case. The Marinos case dealt with the sufficiency of evidence necessary to show an ascertainable loss, not the frequency of a general business practice. And I think that's a distinction that's important for purposes of today. Was Marinos a summary judgment case or a pleading case? I believe Marinos was a summary judgment case, Your Honor. If the Court has no other questions on the issue of CUPA, I'll turn my attention to the jury instruction. Obviously, the appellants raised two questions regarding the jury instruction, whether or not the jury was properly instructed at the beginning when the case was first submitted and whether the trial court judge adequately answered the one question submitted by the jury. Based on the Court's questions during the appellant's argument, I'll focus only on the second aspect, but I'm happy to talk about the first. The question that was asked by the jurors was premised. It began, beyond further proof of claim, what else can you tell us about when the 40-day period ran? And what the record is very clear is that the judge said to all parties, I'm not sure they're asking for a definition of proof of claim. Indeed, the question is premised on something beyond further proof of claim. And so what the Court said it was going to do was it was going to call the jury in. If the jury was asking for the definition of proof of claim, it would give that definition. If the jury wasn't asking for it, it wasn't going to do it. And that's exactly what he did. He called the jury in. He confirmed that they were not asking for the definition of a proof of claim. They were wanting to know, when does the 40 days start? And he simply said, I've given you all I can. I've read the statute to you. That is the point in time at which it would have been appropriate for the appellants to stand up and object and preserve the error, but they chose not to do so. And by choosing not to do so, they've waived the right to argue it today that it was somehow prejudicial. Assuming you're correct, doesn't that simply put it into plain error? In other words, isn't it possible that despite their failing to object at that point, the judge's response to the jury might still be plain error? Sure. The 51D now allows for a plain error analysis, but the Court has been very clear that if you're going to look at plain error, it has to be an egregious error. It has to be, I think the Court has said, the pinnacle that the error had to reach, the pinnacle of fault. It had to represent a miscarriage of justice. The error had to seriously impair the fairness, integrity, or public reputation of judicial proceedings, and that's not what we have here. It's important that we not focus solely in on the 40-day regulation. These instructions were part of a broader bad faith claim. The Court is supposed to assess whether or not the instruction given as a whole as to bad faith was correct and fair under California law. Well, that's the first part. The second part is did the Court err in its response to the jury question. That's right. Again, we would take the position that the Court didn't err, and if it did err, that the error wasn't preserved through an objection. The Court simply responded to the jury's question after getting clarification from it, and again, California law and this Court has found on a number of occasions that a trial court judge has wide latitude in responding to a jury question. You know, they're not claiming this, and I'm not really sure why, but if the KEPTA claim, if summary judgment hadn't been granted on that and that had been tried simultaneously with the bad faith, it would have been a completely different trial because you presented an expert that they obviously believed on. I don't know, there was some documentation, and they said that's why they didn't do it within the time period. If all these other people had been allowed to testify with same or similar stories, it would have been a really different trial for you. It certainly would have been a different trial. And I'm not sure the bad faith would have been the same result. It might not have been, but in any bad faith case, you almost always exclude evidence of wrongdoing as it relates to others. So if their bad faith case is so weak that the only thing they can do is exclude it. But if KEPTA was being tried at the same time, you wouldn't be able to exclude it. That's correct. You might be able to cabin it, but I don't know how well people cabin things is a different story. Well, it does create some practical issues, and it obviously would have impacted the trial court proceedings. There's no question about it. On the question of bad faith, did the bank put on its theory that Phoenix was delaying payments, in this case, for improper reasons? Absolutely, Your Honor. And that's the real irony here, is that there was never an objection at the trial court level about the evidence that was being introduced as it relates to the 40-day regulation or the delay, or the argument of counsel as it relates to the 40-day regulation or the delay. They could have objected. They could have filed a motion in limine. They didn't do any of that. It was part of the proceedings. And so in closing argument, appellants argued, it doesn't matter when you start counting the 40 days, there's still going to be a violation of the regulation. So it's hard to sit here and think, well how is it that on this minor point, in the whole context of bad faith, that the judge's response to the jury question somehow rises to a level of plain error that represents a miscarriage of justice, the pinnacle of fault. You just don't see it. This is not a case that was about a single regulation. This was a case that was about bad faith. The jury heard all the evidence, and they reached a conclusion that they did. Counsel, the CUBA issue was reported to be decided under Connecticut law, bad faith under California law. Was there any effort made by the bank to put in any of these other claimants to support the claim, the theory of bad faith under California law in this case? Not during the course of the trial, Your Honor. The trial court judge said that he was not going to allow evidence of other claims. And you agree to the four-hour limitation, or is that something opposed by the court? Judge Clauser doesn't ask for agreement very often. In all seriousness. It's very difficult for both sides to try their case in four hours, it seems to me. It was, but it forced the parties to be efficient. This was not, once you got rid of all the other cases, this was not a very complex situation. We paid the death benefit within four or five months. The question was whether we had sufficient information to identify who we were supposed to pay. The record is very clear that the parties were not, that U.S. Bank was not cooperating with Phoenix in its investigation to figure out who we're going to pay. We tried to interplead the funds, and U.S. Bank said no, we're not even going to allow you to interplead the funds. Once we received the information we needed to determine who we had to pay, we paid it in two days. So, yeah, the four hours was a bit of a challenge, but it was, again, once you really focused on the facts of this case, it was, it really wasn't very complicated. Yes, and I understand it has nothing to do with this appeal. I'm just sort of curious about it. I see I'm out of time. Does the court have additional questions? Thank you, counsel. We'll give you three minutes for rebuttal. Thank you. First, on the Cupta claim, in response to Judge Singleton's, in the Marinos case specifically, it says, a Cupta litigant may establish, this is the Connecticut Supreme Court, may establish the existence of a genuine issue of material fact as to whether she has suffered an ascertainable loss, which is one of the things that you have to prove, as part of a Cupta claim through the use of affidavits or other documentary evidence such as business records or transcripts of testimony identifying a measurable loss. And if you look at the Biller case, they also talk about statistical analysis in there, and I'm glad Judge Callahan raised the issue of our expert because I had forgotten to press that, because that was a very important affidavit that our expert put in, because he analyzed the claims within this universal life subset of large claims, and he found that they were way out of industry practice, way out of industry custom, and that the resistance rate was much higher than anywhere else. And that was just simply ignored in both the summary judgment. What about Hawkeye? He says that Hawkeye is problematic for you and, in fact, is. . . I think if you look at Hawkeye, you'll see that the court relied on pleadings only, did not rely on declarations. I'm pretty sure of that. I don't want to. . . I know somebody will check me up on that, but there is no Connecticut case that requires a determination of wrongdoing. None. And they can't cite the one. And this opinion is very clear as to what the judge did. With respect to the alternate grounds that Phoenix urges you to adopt, they don't apply here. Ascertainable loss is a standing issue. It requires that we have. . . It actually doesn't require actual damages. It requires that we. . . Loss in time is ascertainable loss under the Connecticut statute. So it does include damages, but it doesn't even require damages. So there's no issue with respect to ascertainable loss here. With respect to the jury question, Judge Callahan, you're absolutely right. It infected the whole trial. And what Judge Callahan did, and probably we should have appealed directly on this issue. What he did was, when he decided the motion to eliminate just before the bad faith trial was to begin, he excluded all evidence. He said, I've already ruled that there will be no. . . that no other cases will come in here unless there are determinations of wrongdoing. And you see this in the supplemental record on pages, I think, 14 and 15. Somewhere around there. But you didn't appeal that. Right, he didn't. We didn't. But we do mention it in our brief as having infected the rest of the trial. Because we weren't allowed to put in any evidence of the other cases. And so we are focused on the jury instruction. We are focused on the fact that they came back hung the night before. And then in the morning they raised this confusion issue as to what . . . when the 40-day period began. The proof of claim is the answer to that question. There's no doubt about that. It is the right answer to that question. And as this Court said in Fraga, the trial judge has a duty to respond to the jury's request with sufficient specificity to clarify the jury's problem. It is reversible error for a trial judge to give an answer to a jury's question that is misleading, unresponsive, or incorrect. And in this case we had all three in response to that question. Your time is up. Thank you. Any other questions from the panel? Thank you very much for your argument. Thank all of you for coming out to the Ninth Circuit to argue today. And the argument has been very helpful to us. Thank you very much. The case will be submitted for decision.
judges: Singleton, Thomas, Callahan